UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
DINO ANTOLINI,                                    :   Case No.: 1:19-cv-06264 (LGS)
                                                  :
                        Plaintiff,                :
                                                  :
        - against -                               :
                                                  :
KENNETH ROSENBLUM, BERNICE                        :
ROSENBLUM, VILLAGE REALTY LLC,                    :
JORGE GUZMAN and LAMANO WEST                      :
VILLAGE LLC,                                      :
                                                  :
                        Defendants.               :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X


# MEMORANDUM OF LAW
## IN SUPPORT OF DEFENDANTS'
## OMNIBUS MOTION TO COMPEL, DISMISS AND RELATED RELIEF

TABLE OF CONTENTS

TABLE OF AUTHORITIES ..............................................................................................i

INTRODUCTION .........................................................................................................1

PRELIMINARY STATEMENT .......................................................................................2

BACKGROUND FACTS AND PROCEDURAL HISTORY .......................................5

ARGUMENT

POINT I

PLAINTIFF SHOULD BE COMPELLED TO APPEAR AND PRODUCE
EVIDENCE OF LAWFUL RETENTION OF STUART H. FINKELSTEIN AND
APPEAR FOR A FRAMED-ISSUE HEARING ON THE ISSUE OF
RETENTION, FAILING WHICH THIS ACTION MUST BE DISMISSED
WITH PREJUDICE..........................................................................................................9

    A.  Fraud And The Court's Inherent Power To Investigate And Assess
         Sanctions...............................................................................................................9

    B.  Sufficient And Compelling Grounds Exist To Warrant This Court's Closer
         Scrutiny................................................................................................................10

        1.  The Fraud Involving One "Jose Figueroa" (a/k/a "Victim-2"....................11

        2.  The Striking Parallels To Instant Action And Others By Mr.
            Finkelstein On Behalf of One "Dino Antolini"..........................................15

        3.  Plaintiff "Nicole Burgess": The Striking Parallels In 8 Actions Filed
            On Her Behalf To The Criminal Complaint Allegations *And* The Dino
            Antolini Lawsuits ........................................................................................16

    C.  The Totality Of The Facts Gleaned From The Criminal Complaint, And
         The Multitude Of ADA Lawsuits Filed By Mr. Finkelstein, *Strongly*
         Suggests An Expansive, Brazen And Continuing Scheme To Defraud The
         Court And Parties ................................................................................................18

POINT II

STUART FINKELSTEIN SHOULD BE DISQUALIFIED FROM
REPRESENTING THE PLAINTIFF IN THIS ACTION AND REFERRED TO
THE NEW YORK STATE BAR DISCIPLINARY AUTHORITIES FOR
OPENING OF AN INVESTIGATION INTO HIS RE-INSTATEMENT TO THE
NEW YORK BAR ..................................................................................................... 20

    A. Disqualification of Counsel ............................................................................ 20

    B. *At The Very Least,* Mr. Finkelstein Should Be Disqualified From
       Continuing To Represent Plaintiff In This Action ........................................... 20

CONCLUSION ................................................................................................................ 21

## TABLE OF AUTHORITIES

### CASES

Braun ex rel. Advanced Battery Techs., Inc. v. Zhiguo Fu,
    2015 WL 4389893 (SDNY 2015) ...................................................................... 10

Chambers v. NASCO, Inc.,
    501 U.S. 32 (1991) ............................................................................................. 9

Hazel-Atlas Glass,
    322 U.S. 238 (1944) ............................................................................. 10, 19, 20

Hempstead Video, Inc., v. Inc. Vill. of Valley Stream,
    409 F.3d 127 (2d Cir. 2005) ............................................................................ 20

McMunn v. Mem'l Sloan–Kettering Cancer Ctr.,
    191 F.Supp.2d 440 (SDNY 2002) .................................................................... 10

National Credit Union Admin. Bd. V. RBS Securities, Inc.,
    No. 13 Civ. 6726, 2014 WL 1257775 (SDNY 2014)........................................ 20

New York Credit & Fin. Mgmt. Grp. v. Parson Ctr. Pharmacy, Inc.,
    432 Fed.Appx. 25 (2d Cir. 2011) .................................................................... 10

4842-5603-7451, v. 1

Purgess v. Sharrock,
    33 F.3D 134 (2d. Cir. 1994) ........................................................................................ 20

Scholastic, Inc. v. Stouffer,
    221 F.Supp.2d 425 (SDNY 2002) ............................................................................ 10

United States v. Beggerly,
    524 U.S. 38  (1998) .................................................................................................... 20

Universal Oil Products Co. v. Root Refining Co.,
    328 U.S. 575 (1946) .................................................................................................. 10

STATUTES

28 U.S.C. § 1927 ................................................................................................................... 2

# INTRODUCTION

Defendants, through their attorneys, respectfully submit this Memorandum of Law in support of their joint motion, pursuant to this Court's inherent authority, for omnibus relief seeking an Order as follows:

(a)  Compelling plaintiff's counsel, Stuart H. Finkelstein, Esq. to produce a duly executed retainer agreement *or* an affidavit sworn to before a notary or declaration evidencing the circumstances leading to his retention by plaintiff Dino Antolini in this action; *and*

(b)  Compelling plaintiff to produce an Affidavit sworn to before a notary public, evidencing the facts and circumstances leading to his retention of Stuart H. Finkelstein, Esq. for the express purpose of commencing and prosecuting the within action; *and*

(c)  Ordering a framed-issue hearing within 30 days of the production of evidence of lawful retention, including relief sought under (a) and (b) and such other conditions as set by this Court, and compelling plaintiff's in-person attendance at a framed-issue hearing for the examination of the plaintiff under oath on the subject of plaintiff's retention of Stuart H. Finkelstein, Esq. and the evidence produced, if any, as to said retention; *or*

(d)  Dismissing this action, with prejudice, upon plaintiff's failure to demonstrate with competent evidence the lawful and ethical retention of Stuart H. Finkelstein, Esq. either by way of a lawful, duly executed retainer agreement and sworn Affidavit and/or upon plaintiff's failure to appear for a framed issue hearing as directed by this Court; *or*

(e)  Disqualifying Stuart H. Finkelstein, Esq. from continued representation in this matter, whose good standing in and lawful re-instatement as a member of the bar of the State of New York, according to a pending criminal complaint in the Southern District of New York, is predicated upon false representations to the bar licensing authorities of New York State, that during his period of disbarment he was not engaged in the practice of law when, in fact, according to the unsealed SDNY criminal complaint, Mr. Finkelstein was so engaged in the State of Florida; *and*

(f)  Staying all proceedings and affording plaintiff 60 days to retain new counsel, or elect to proceed *pro se*, failing either of which the matter should be dismissed with prejudice; *and*

1

(g)     Referring the matter of Stuart H. Finkelstein's pending criminal complaint to the bar licensing authorities of the State of New York, in which said complaint outlines Mr. Finkelstein's alleged unauthorized practice of law during the same period he allegedly misrepresented to the New York bar licensing authorities that he was not so engaged as a fraudulent predicate to his reinstatement to the New York bar; *and*

(h)     Referring Stuart H. Finkelstein to the Grievance Committee of the Southern District of New York, of the existence of the instant controversy to join an existing referral and investigation by said Committee concerning other highly questionable conduct arising out of his purported representation of Jose Figueroa in virtually identical ADA lawsuits, who, upon information and belief, is referred to in the pending Criminal Complaint against Mr. Finkelstein as "Victim-2"; *and*

(i)     Granting defendants reasonable fees and costs incurred in connection with continued defense of this action as warranted and deemed appropriate by the Court pursuant to 28 USC § 1927; *and*

(j)     Referring this action and the multitude of other virtually identical ADA lawsuits filed by Mr. Finkelstein in the name of Dino Antolini to the United States Attorney's Office for the Southern District of New York for further investigation by that office; *and*

(k)     Granting defendants such other relief as this Court may deem just and proper.

All exhibits cited are attached to the Declaration of Juan C. Gonzalez, Esq. ("Gonzalez Decl."), which are incorporated herein by reference as if fully stated herein.[1]

## PRELIMINARY STATEMENT

The within action for alleged violation of the Americans with Disabilities Act ("ADA") in a place of public accommodation was purported to have been lawfully commenced on behalf of plaintiff Dino Antolini by and through Mr. Stuart H. Finkelstein, Esq.

---

[1] The Declaration of Zachary Landau is also incorporated herein by reference, with whom this motion is jointly made.

It is respectfully submitted that sufficient and disturbing grounds exist to warrant all of the relief requested herein. *At the very least, a framed-issue hearing should be ordered, and Mr. Finkelstein be disqualified from continued representation in this matter.*

The overriding predicate for the relief sought herein is that Stuart H. Finkelstein, Esq., according to an unsealed criminal complaint dated 11/12/19, is presently under criminal legal jeopardy in connection with an allegedly expansive scheme to file or cause to be filed "over 300 lawsuits pursuant to the [ADA]" in the U.S. District Court for the Southern Districts of Florida and New York "at least" covering the period from October 2013 "up to and including *at least* in or about May 2019" (Criminal Complaint, ¶¶ 1, 8). Generally, this criminal scheme is alleged to have involved the filing or having caused to be filed by Mr. Finkelstein a multitude of fraudulent ADA suits in concert with witting or unwitting plaintiffs and potentially others in the States of Florida and New York spanning at least the above-stated period, according to the unsealed criminal complaint.

As set forth below, and as set forth in great detail in the unsealed criminal complaint, the serial pattern of ADA filings referenced in the pending criminal complaint on their face bear striking parallels not only to the instant matter, but also to other matters documented in public records suggesting that Mr. Finkelstein appears to have perpetrated fraudulent ADA filings on behalf of other plaintiffs (as witting co-conspirators or not). Including the instant action, between 4/3/18 and 11/14/19, Mr. Finkelstein has affirmatively filed a total of 16 virtually identical ADA lawsuits before this Court *(this now being the second lawsuit presented before this Honorable Court)*.

In order to protect the integrity of this Court, the judicial process and all attendant court and party resources, the facts as outlined below are grounds sufficient to warrant this

3

Courts immediate intervention in ordering plaintiff to appear before the Court for an inquiry into the circumstances behind plaintiff's purported retention of Stuart H. Finkelstein, Esq., barring which this matter must be dismissed with prejudice.

*At the very least*, Mr. Finkelstein must be disqualified from continued representation of the plaintiff in this action: in 2006 Mr. Finkelstein tendered his resignation from the bar of the State of New York as a result of various grievance investigations against him.  According to the pending criminal complaint, in 2014 Mr. Finkelstein moved to be reinstated to the New York bar, and in so doing, falsely represented (according to the criminal complaint now pending) to the governing authorities of the New York bar that he "neither practiced law nor held himself out as a lawyer while disbarred", this despite the fact that, again according to the criminal complaint, Mr. Finkelstein caused to be "filed approximately over 280 [ADA] lawsuits" in the U.S. District Court for the Southern District of Florida, generating approximately $650,000 in attorneys' fees.  The victim plaintiff behind these fraudulent suits in Florida (whose identity was stolen by Mr. Finkelstein) filed an ethics complaint against Mr. Finkelstein.

Moreover, not only does the criminal complaint itself warrant referral of Mr. Finkelstein to the governing body of the New York state bar, but also because the criminal complaint outlines the added layer of alleged falsehoods and misrepresentations by Mr. Finkelstein to the New York bar authorities, *directly calling into question the legitimacy of Mr. Finkelstein's current status (as of Mr. Finkelstein's reinstatement to the New York State bar in 2016) as a good standing member of the New York bar.*

Stated simply, to permit Mr. Finkelstein to continue to prosecute this action on behalf of the plaintiff here – even assuming his retention was legitimately procured – would be to

4

risk the continued perpetration of the unauthorized practice of law by Mr. Finkelstein if the allegations in the criminal complaint are proven true, thereby rendering this entire action void *ab initio,* to say nothing of the specter of fraud.

## BACKGROUND FACTS AND PROCEDURAL HISTORY

As the Court may be aware, this matter has a very lengthy and somewhat complicated factual and procedural history.

The instant action was commenced by plaintiff Dino Antolini by and through Stuart Finkelstein, Esq. on or about July 5, 2019 (Dkt # 1).

In the complaint, plaintiff alleges that he is afflicted by numerous disabilities, including ataxia (involuntary control of muscle movements due to central nervous system dysfunction) and alleges that he is disabled as defined by the Americans with Disabilities Act and is required to use a wheelchair for mobility purposes.

On 9/9/19 defendants answered the complaint (Docket #: 21).   In their answer, defendants denied all material allegations on the basis, *inter alia*, that the complaint suggests possible fraud upon the court in its filing (see Answer, Docket #: 21, ¶ 12).   Specifically, while plaintiff purported to serve the complaint upon parties relative to the establishment located at 39 Christopher Street, New York, New York 10014 (commercial establishment known as "Lamano West Village"), in fact in his complaint, plaintiff instead referenced having visited or attempted to visit a different location, namely "Café Katja", located at 79 Orchard Street in Manhattan. (see Answer, Docket # 21, ¶¶ 117-118).   Indeed, in their answer, defendants point out that the latter location is the identical location referenced, with photographs, in at least one other identically alleged complaint (see Answer, Docket 21, ¶¶ 119-120, *referencing* Antolini v. Morgenstern, et al., 19-cv-04938-JMF [filed 5/28/19]).

5

In defendants' answer, counterclaims were interposed raising the prospect of this action constituting a fraudulent filing with the Court and for a declaration as to same and that the establishment is in fact in ADA compliance (counterclaim # 1); that plaintiff/counter-defendant made a material misrepresentation or omission of fact (counterclaim # 2); and requesting damages on their counterclaims, together with costs, attorneys' fees and such other relief as the Court deems proper.[2]

In October 2019, Mr. Finkelstein was arrested in Florida (see Gonzalez Decl.  on charges of mail fraud, aggravated identity theft, false declarations to a court, and obstruction of justice  the matter was ultimately transferred to this district for prosecution when on November 19, 2019, the U.S. Attorneys' Office for the Southern District of New York unsealed the criminal complaint against Mr. Finkelstein and was assigned Docket No. 19-CR-MAG-10645.  See Gonzalez Decl., Criminal Complaint, **Exhibit A**.  Among other charges, the criminal complaint charges Mr. Finkelstein with the following (id., ¶¶8-9) (emphasis added):[3]

> 8.    * * * * STUART FINKELSTEIN, the defendant, is a lawyer who has filed, or has caused to be filed, over 300 lawsuits pursuant to the Americans with Disabilities Act ("ADA") on behalf of two purported plaintiffs, Victim-1 and Victim-2. These lawsuits were filed in the United States District Courts for the Southern District of Florida and the Southern District of New York against various public establishments (the "Victim Public Establishments").  Each of these lawsuits made representations that Victim-1 and Victim-2 were

---

[2] Plaintiff failed to answer the counterclaims, and his time to do so had long since expired.  On 10/8/19, plaintiff's counsel, Stuart H. Finkelstein, Esq., filed a letter application requesting an extension to respond to the counterclaims (Dkt # 28).  A Clerk's Certificate of Default was filed on 10/9/19 (Dkt # 35), coupled with a motion for default judgment on the counterclaims (Dkt. # 36).  On 10/23, this Court denied plaintiff's request, noting that: "Nothing prevented your filing of a timely answer but your decision not to do so until you thought appropriate." (Dkt. # 38).  Undeterred, on 11/1/19, Mr. Finkelstein filed yet another letter requesting leave to file a motion to vacate the Clerk's Default (Dkt. # 39), alluding to, but not specifying a single of the "myriad [of unspecified] reasons" why plaintiff could not file a timely answer to the counterclaims.

[3] See also Appearance Bonds issued in Florida and New York, Gonzalez Decl., **Exhibits B and C**.

represented by FINKELSTEIN or an associate.  Furthermore, each of these lawsuits alleged that Victim-1 and Victim-2 attempted to visit the Victim Public Establishments but were unable to do so because of those establishments' alleged noncompliance with the ADA. The lawsuits sought attorney's fees and injunctive relief to address the alleged noncompliance with the ADA.

9.    **The lawsuits filed by STAURT FINKELSTEIN, the defendant, however, were fraudulent. Victim-1 and Victim-2 neither retained nor authorized FINKELSTEIN to file ADA lawsuits on their behalf**. Contrary to FINKELSTEIN's representations, Victim-1 and Victim-2 never attempted to visit the Victim Public Establishments. Instead, **FINKELSTEIN stole the identities of Victim-1 and Victim-2, made numerous false representations to the Victim Public Establishments and the courts in the Southern District of New York** and the Southern District of Florida, obstructed official judicial proceedings, and then **settled these fake lawsuits in order to collect approximately $930,000 in attorney's fees.**

In addition to referencing "approximately over 280" fraudulent suits in Florida between 2013 and 2016 (*id.*, ¶ 13), the complaint also reveals that Finkelstein allegedly submitted false statements to the New York State Bar in connection with his 2014 motion for reinstatement, including that following his 2007 disbarment, he "neither practiced law nor held himself out as a lawyer while disbarred" (*id.*, ¶ 18), contrary to the hundreds of allegedly fraudulent ADA suits commenced in the State of Florida, and despite the express conditions of his 2/13/07 disbarment from the New York Bar, which provided that Mr. Finkelstein (Matter of Finkelstein, 39 A.D.3d 120, 122 [2d Dep't 2007]; Gonzalez Decl., **Exhibit E**):

* * * desist and refrain from (1) practicing law in any form, either as principal, agent, clerk, or employee of another, (2) appearing as an attorney or counselor-at-law before any court, judge, justice, board, commission or other public authority, (3) giving to another an opinion as to the law or its application or any advice in relation thereto, and (4) holding himself out in any way as an attorney and counselor-at-law * * * *

Despite the above command from 2007 barring Mr. Finkelstein from practicing law *anywhere*, the criminal complaint also cites that Mr. Finkelstein practiced law in Florida

7

without a license during the period of his disbarment.  The criminal complaint specifically

notes (**Exhibit A,** ¶18) (emphasis added):

> 18.     Based on my review of records maintained by the Appellate Division of
> the Supreme Court of the State of New York, Second Judicial Department, in
> Brooklyn, New York, **I have learned that in approximately September 2014,**
> **STUART FINKELSTEIN, the defendant, moved for reinstatement to the**
> **New York State Bar.  In connection with that motion, FINKELSTEIN**
> **made or caused to be made several false representations concerning**
> **FINKELSTEIN's work history in Florida.    For example,**
> **FINKELSTEIN's motion stated, falsely, that following his 2007**
> **disbarment, he "neither practiced law nor held himself out as a lawyer**
> **while disbarred."   In describing his employment history in Florida,**
> **FINKELSTEIN made no mention of the fact that he assisted Attorney-1 in**
> **litigating ADA claims.  FINKELSTEIN also included his 2013 tax returns**
> **as an attachment to his application, which omitted the income that**
> **Attorney-1 paid FINKELSTEIN or a company that FINKELSTEIN**
> **established to receive payments from Attorney-1.**

Mr. Finkelstein, who was disbarred by the State of New York in 2007, was clearly

practicing law in Florida when he sought and was granted reinstatement by the New York

authorities in 2013 in direct contradiction to his representation to the New York licensing

authorities.

These and other issues were brought to the Court's attention by way of a letter

application seeking leave and guidance on these issues, and for which defendants were

granted leave to file the instant omnibus motion by 4/2/20, making this motion timely.[4]

---

[4] See Gonzalez Decl., **Exhibit D**; see also Dkt. # 41.

8

**ARGUMENT**

**POINT I**

**PLAINTIFF SHOULD BE COMPELLED TO APPEAR AND PRODUCE EVIDENCE OF LAWFUL RETENTION OF STUART H. FINKELSTEIN AND APPEAR FOR A FRAMED-ISSUE HEARING ON THE ISSUE OF RETENTION, FAILING WHICH THIS ACTION MUST BE DISMISSED WITH PREJUDICE**

Based upon Mr. Finkelstein's alleged criminal conduct, coupled with the sheer volume of virtually identical ADA lawsuits on behalf of the same plaintiffs and questionable conduct revealed through public records in many of those cases, there exists substantial and good faith bases to believe that either Stuart H. Finkelstein was never lawfully retained by Dino Antolini in this (and possibly other) virtually identical ADA actions on behalf of Dino Antolini.

As such, Mr. Finkelstein should be compelled to produce sufficient evidence of a lawful retainer to prosecute the instant action *and* plaintiff himself should be compelled to appear before this Court for a framed issue hearing, under oath, to test the veracity of such alleged retention and the facts and circumstances surrounding same.

A.   **Fraud And the Court's Inherent Power To Investigate And Assess Sanctions**

When there is a suspicion of a fraud being perpetrated on the Court, this Court has broad discretion to investigate, uncover and resolve such suspicions in the interests of justice and the preservation of judicial resources and prevent the continued perpetration of a fraud upon the Court.  "It has long been understood that certain implied powers must necessarily result to our Courts of justice from the nature of their institution, powers which cannot be dispensed with in a Court, because they are necessary to the exercise of all others." Chambers v. NASCO, Inc., 501 U.S. 32, 43 (1991) (citation omitted).

9

Included in the court's inherent power is the authority of the court to conduct an independent investigation to determine whether it has been a victim of an attorney's fraud. See Universal Oil Products Co. v. Root Refining co., 328 U.S. 575, 580 (1946). "[T]ampering with the administration of justice * * * involves far more than an injury to a single litigant.  It is a wrong against the institutions set up to protect and safeguard the public, institutions in which fraud cannot complacently be tolerated consistently with the good order of society." Hazel-Atlas Glass, 322 U.S. 238, 246 (1944).

Thus, this Court possesses the inherent power to impose sanctions on a party and counsel for perpetrating a fraud on the Court.  Such sanctions "are warranted if it is 'established by clear and convincing evidence that [a party] has knowingly set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate' the action.'" New York Credit & Fin. Mgmt. Grp. v. Parson Ctr. Pharmacy, Inc., 432 Fed.Appx. 25, 25 (2d Cir.2011), *quoting* Scholastic, Inc. v. Stouffer, 221 F.Supp.2d 425, 439 (S.D.N.Y.2002); see also Braun ex rel. Advanced Battery Techs., Inc. v. Zhiguo Fu, 2015 WL 4389893, at *17 (S.D.N.Y. July 10, 2015); see also McMunn v. Mem'l Sloan–Kettering Cancer Ctr., 191 F.Supp.2d 440, 445 (S.D.N.Y.2002) ("essence of a fraud upon the Court" is "when a party lies to the court and his adversary intentionally, repeatedly, and about issues that are central to the truth-finding process").

**B.      Sufficient and Compelling Grounds Exist
To Warrant This Court's Closer Scrutiny**

Here, direct evidence of fraud or at a minimum an affirmative material misrepresentation began at inception of this lawsuit with the allegations in the complaint itself.  Specifically, while plaintiff purported to serve the instant complaint and sue the

establishment located at 39 Christopher Street, New York, New York 10014 (commercial establishment known as "Lamano West Village"), plaintiff instead referenced having visited or attempted to visit a *different location*, namely "Café Katja", located at 79 Orchard Street in Manhattan. (see Answer, Docket # 21, ¶¶ 117-118).  This factual allegation, which goes to the very heart of this action and the parties named, cannot be chalked up to a typographical error, but instead, can only be indicative of a filing by Mr. Finkelstein of a suit against the instant defendants based upon a cut and paste job from another complaint brought in the name of Dino Antolini by Mr. Finkelstein when in fact Mr. Antolini had nothing whatsoever to do with the public establishment for which these defendants are named in this lawsuit. See Answer, Docket # 21, ¶¶ 119-120, referencing Antolini v. Morgenstern, et al., 19-cv-04938-JMF (filed 5/28/19).

The foregoing is just the tip of the iceberg.

### 1. The Fraud Involving One "Jose Figueroa" (a/k/a "Victim-2")

Glaringly consistent with the pattern of deception alleged in the criminal complain of filing *hundreds* of virtually identical ADA lawsuits in the name of "Victim-1" in Florida whose identity is alleged to have been stolen by or at the behest of Mr. Finkelstein, in the SDNY, Mr. Finkelstein has a similar track record:  Mr. Finkelstein has filed approximately **29 ADA lawsuits in the name of one "Jose Figueroa" for which he has collected approximately $270,000 in settlement fees.** Jose Figueroa is an individual claimed to be disabled all the while having attempted to visit a number of establishments throughout New York City, sometimes within days of each other, other times on the same day, and having caused to commence a multitude of lawsuits in his name.  It is now clear that the 29 ADA suits filed by Mr. Finkelstein on behalf of **"Jose Figueroa" is, in fact, "Victim-2"** that

11

forms the basis of the U.S. Attorney's criminal complaint.  See Gonzalez Decl., Criminal Complaint, **Exhibit A**.

*First,* the earliest of such filings on behalf of Mr. Figueroa appears to have been August 2017 and the latest appears to have been filed in December 2018, a time period that matches up with the U.S. Attorney's Office's investigation and allegations in ¶¶ 20-21 of the criminal complaint of approximately 30 ADA suits since August 2017.  See Gonzalez Decl, Docket Sheet attached to 11/27/19 Letter, **Exhibit D**.

*Second*, the allegations in the Criminal Complaint recount Special Agent Mason Posilkin's investigation, which included interview(s) with Mr. Figueroa.  Special Agent Posilkin recounts what he learned about Mr. Figueroa and his putative relationship with Mr. Finkelstein, *to wit:*

- "Victim-2 neither authorized the Victim-2 Lawsuits, nor visited any of the" public establishments that formed the basis of any of the 29 ADA lawsuits commenced by Mr. Finkelstein (Gonzalez Decl., **Exhibit A**, ¶ 21);

- "Approximately twenty years ago, FINKELSTEIN had represented Victim-2 in connection with a personal injury lawsuit" (id., ¶ 21[a]);

- Mr. Figueroa referred a family member to Mr. Finkelstein to represent same in a personal injury lawsuit, and at some point in 2019 even accompanied the family member "to an in-person meeting with FINKELSTEIN in a hotel in Brooklyn", and as a consequence, paying Mr. Figueroa "a referral fee" paid to him "in three installments between" January and August 2018 (id., ¶ 21[b]-[c]);

- Mr. Finkelstein obtained Mr. Figueroa's ("Victim-2") personal private information and medical records in connection with Mr. Finkelstein purportedly referring Mr. Figueroa to a disability benefits attorney in connection with denial of benefits (id., ¶ 21[d]).

Based upon the foregoing alone, and a review of only some of the filings in Figueroa v. 153 East 33rd St. Family Limited P'ship, et al., Case No.: 1:18-cv-02621 (ER) (KNF) and

others it is _immediately_ clear that Victim-2 is Jose Figueroa.  See Gonzalez Decl., **Exhibit F**.

Specifically, in a filing on 2/23/19, Mr. Finkelstein requested a 45-day extension for

complying with the Court's order in Figueroa v. 117 Perry Street LLC, et al., Case No.:

1:18-cv-01789 because **"this matter affects my license and my ability to practice law"**

and was "in the process of trying to obtain counsel so that [he] may prepare an appropriate

response" to the Order (id., Dkt. 28; **Exhibit F**).  It is around this time in early 2019 that Mr.

Finkelstein was being investigated, which culminated in the unsealing of the Criminal

Complaint referenced herein.

In Figueroa v. 153 East 33rd St. Family Limited P'ship, et al., Case No.: 1:18-cv-

02621 (ER) (KNF), Mr. Finkelstein in responding to an Order of Judge Ramos, "[i]n light of

his **puzzling and insufficient responses**" to a prior Order, directed Mr. Finkelstein to file an

Affidavit, "signed under penalty of perjury, specifying" why he could not continue to

represent Mr. Figueroa, when he last had contact with plaintiff, and the method, whether he

communicated to Mr. Figueroa his desire to voluntarily dismiss the case, and whether

plaintiff consented (id., Dkt. 60; **Exhibit F**). In response, Mr. Finkelstein submitted false

statements to the Court in furtherance of his fraud, and in so doing, has now unwittingly

revealed that Mr. Figueroa is in fact "Victim-2" within the Criminal Complaint.  See also

Figueroa v. 153 East 33rd St. Family Limited P'ship, et al., Case No.: 1:18-cv-02621 (ER)

(KNF) (Dtk. 65, n. 4 [the "media has reported that Mr. Finkelstein has filed numerous

lawsuits on behalf of Plaintiff Jose Figueroa without his consent") (**Exhibit F**).

Specifically, Mr. Finkelstein stated that he has "known Mr. Figueroa for over twenty

years", having represented Mr. Figueroa "in a significant personal injury matter" (Dtk. 62;

**Exhibit F**; _Cf._ Gonzalez Decl, **Exhibit A**, Criminal Complaint, ¶ 21[a]); Mr. Finkelstein

also averred that he has "also represented a family member of" Mr. Figueroa, precisely as
Mr. Figueroa recounted to the investigator as set forth in the Criminal Complaint (¶ 21[b]-
[c]), all mirror image statements conveyed by "Victim-2" to the Special Agent that
investigated Mr. Finkelstein.

Ultimately, in <u>Figueroa v. 153 East 33rd St. Family Limited P'ship, et al.</u>, Case No.:
1:18-cv-02621 (ER) (KNF), due to repeated failures of Mr. Finkelstein to produce his client
for a deposition, and further false and fraudulent filings with the Court concerning Mr.
Finkelstein's unilateral decision to voluntarily dismiss the action without satisfying the
Court that the client was consulted, the action was dismissed and Mr. Finkelstein was
referred to the Grievance Committee of the Southern District of New York (<u>id.</u>, Dkt. 65;
**Exhibit F**).  In so doing, Judge Ramos poignantly and prophetically observed (emphases
added):

- "The Court [was] not convinced that Mr. Finkelstein's [purported]
  mistake" in unilaterally dismissing his client's case without consent
  "innocent" (Dkt. 65, pg. 2);

- "Additional questionable circumstances include Mr. Finkelstein's
  **unforthcoming communications with Magistrate Judge Fox and this
  Court, which required Mr. Finkelstein to answer questions under
  penalty of perjury that he had previously failed to address**" (<u>id.</u>, Dkt.
  65, pg. 2).

Judge Ramos' decision to refer Mr. Finkelstein to the Grievance Committee was not
the first such action taken by a court of the Southern District of New York.  As Judge
Ramos' Order (Dtk. 65; **Exhibit F**) notes: "The Court also takes judicial notice that Judge
Caproni, in a case involving a different plaintiff represented by Mr. Finkelstein, **similarly
ordered him to 'show cause why he should not be referred to the Grievance Committee**

of the Southern District of New York for **voluntarily dismissing his client's case with prejudice"** in violation of ethical rules (Dkt. 65, n. 3; **Exhibit F**).

        2.        **The Striking Parallels To Instant Action And Others**
                        **By Mr. Finkelstein On Behalf of One "Dino Antolini"**

According to public docket records on PACER, on behalf of plaintiff Dino Antolini himself, *excluding* this case, Mr. Finkelstein has filed 15 other virtually identical ADA lawsuits in Mr. Antolini's name, some of which bear public filings that echo the serious concerns of fraud allegedly perpetrated by Mr. Finkelstein, consistent with the disturbing allegations outlined in the criminal complaint.  See Gonzalez Decl., **Exhibit D**).  *To wit:*

- Antolini v. 110 Thompson St Owners Corp et al, 1:19-cv-10567-PGG-RWL (SDNY):  The **"validity of claimant and [the] claim" was raised** as a concern (Dkt. 30, ¶ 3); on 1/15/10 the Court ordered plaintiff to appear for a preliminary deposition on 2/15/20 with **two forms of identification, and also ordered Mr. Finkelstein to "produce a sworn affidavit or declaration from his client** indicating that Mr. Finkelstein has been authorized to represent him in bringing this action" (Dkt. 30); on 2/6/20, the Court admonished Mr. Finkelstein for violating the order in failing to produce said affidavit or declaration under penalty of perjury.  Only upon a 2/5 letter motion to dismiss by defendants did Mr. Finkelstein, "later that day * * * **belatedly** transmitted the requisite declaration to the Court by email and **offering as an excuse for his delay that he and his client had not previously been able to "get together" since the directive"** (Dkt. 36).  Mr. Finkelstein then purported to supply the court with a document labeled "Declaration of Dino Antolini" (Dkt. 37).  *This document, however, was obviously prepared by Mr. Finkelstein, purportedly signed by Mr. Antolini.  An attorney-prepared declaration for a client's signature is not unusual.  Under the multitude of facts and circumstances surrounding the criminal allegations against Mr. Finkelstein, including allegations of forgery and stealing of identifies of individuals in whose name Mr. Finkelstein is alleged to have filed <u>hundreds of virtually identical ADA lawsuits</u>, it is respectfully submitted that an attorney-prepared declaration, purportedly signed by Mr. Antolini, without an appearance and sworn testimony at a framed-issue hearing, is insufficient in light of all that we have now learned.  It is for this reason that more, beyond a simple attorney-prepared declaration, is required in order to truly test the legitimacy of this claim, like so many others.*

- Antolini v. 75 & 81 Orchard Associates LLC et al, 1:19-cv-05894-LGS *(pending before Your Honor):* Upon the unsealing of Mr. Finkelstein's criminal complaint, counsel for defendants on 11/21/19 requested an immediate stay and to order that Mr. Finkelstein produce evidence of his retention by Mr. Antolino (Dkt. 45). This Court so-ordered Mr. Finkelstein to do so by 11/29/19 (Dkt. 46), but instead, Mr. Finkelstein "informed [the Court] that [he] is unable to litigate this matter" and by Order of the Court on 11/26/19, the case was dismissed without prejudice (Dkt. 47). Upon representations by Mr. Finkelstein of a "condition" being lifted in the pending criminal proceedings, this Court rescinded its dismissal order (Dkt. 50) *but still* ordered Mr. Finkelstein to "produce [by 12/13/19] **evidence sufficient to show that the Plaintiff retained him**" in this matter (Dkt. 50). On 12/16/19, Mr. Finkelstein filed what was emailed to the court only on 12/11/19 in which he represented to the Court that if ordered to do so, Mr. Antolini and I would of course" appear before the Court "if so desired" (Dkt. 53). As purported "evidence" of his lawful retention, Mr. Finkelstein simply attached what purported to be an email in which Mr. Antolini replies back to Mr. Finkelstein that he "retained the Finkelstein Law Group Stuart Finkelstein to represent me in the ADA case with 75-81 Orchard St." (Dkt. 53). *It is respectfully submitted that a PDF of an email, unsworn as it is by plaintiff himself, is not sufficient evidence of retention, particularly in light of the multitude of other cases where parties have attempted to outline for courts the various red flags that inevitably point to fraudulent filings or misrepresentations to the Court.*

### 3. Plaintiff "Nicole Burgess": The Striking Parallels In 8 Actions Filed On Her Behalf To The Criminal Complaint Allegations *And* The Dino Antolini Lawsuits

Between May and August 2018, Mr. Finkelstein filed no less than 8 virtually identical ADA lawsuits on behalf of one Nicole Burgess. See Gonzalez Decl., **Exhibit E.** In one, the issue of Ms. Burgess' medical condition going towards the question of disability (ostensibly) was pressed in discovery by defendants, demanding HIPAA-compliant authorizations signed by Ms. Burgess. See Burgess v. Goodman et al, 1:18-cv-06584-VEC (SDNY). Following extensive motion practice leading to "repeated" violation of discovery orders, the Court dismissed the action with prejudice due to Mr. Finkelstein's inability to produce HIPAA-compliant authorizations for the release of plaintiff's medical records. See

16

Burgess v. Goodman, 2019 WL 719199 (SDNY Feb. 20, 2019).  In so dismissing the action,

the Court noted "**Mr. Finkelstein's repeated and well-documented failures** to produce a

valid, HIPPA-compliant medical records release from his client consistent with this Court's

orders".  Burgess, 2019 WL 719199 at * 1; see also Dkt. 52, 57.  In ordering the case

dismissed with prejudice pursuant to Fed. R. Civ. P. 41(b), the Court (Hon. Valerie Caproni),

recounted the following disturbing and ethically questionable conduct of Mr. Finkelstein

(Burgess, 2019 WL 719199 at * 1) (emphasis added):

> [D]espite the order's explicit instruction that Mr. Finkelstein submit an
> affidavit from his client explaining her involvement—if any—in Mr.
> Finkelstein's handling of this case, Mr. Finkelstein **submitted no such
> affidavit.  "Disturbed that Mr. Finkelstein ha[d], apparently, seen fit to
> prosecute this case when he ha[d] lost the ability to communicate and
> consult with his client** and ha[d] done so without informing either the Court
> or his adversary," the **Court ordered Mr. Finkelstein to submit an affidavit,
> signed under penalty of perjury, specifying (1) when he last had contact
> with Plaintiff Burgess and (2) precisely what efforts he had made to
> contact her since their last communication. See Dkt. 60 at 2. The Court's
> order warned that vague statements—e.g., "Plaintiff has been unavailable
> for me to obtain her authorization for her medical records"—would be
> insufficient. Id.**

> In response to the Court's order, Mr. Finkelstein submitted a sworn affidavit
> stating only that his "last contact with Plaintiff Burgess was the last week of
> November, 2018"; that "[s]ince that time," he has "been unable to
> communicate with Plaintiff Burgess"; and that he has "called Plaintiff Burgess
> and her phone number is not working and have [sic] been unable to speak with
> her." Dkt. 61. The Court therefore ordered Mr. Finkelstein to show cause why
> this case should not be dismissed under Fed. R. Civ. P. 41(b) because Mr.
> Finkelstein has lost all contact with his client. See Dkt. 62.

> Mr. Finkelstein submitted a memorandum of law and sworn affidavit in
> response to that order, see Dkt. 63; Defendants, pursuant to the order,
> submitted their own papers and exhibits in support of dismissal (styled as a
> motion to dismiss under Rule 41(b)), see Dkts. 64-68; and Mr. Finkelstein
> submitted a final round of briefing and documents in reply, see Dkt. 71. **Mr.
> Finkelstein's submissions offered no further facts regarding his attempts
> to reach his client; they did, however, reveal that after having lost contact
> with Ms. Burgess, he signed a stipulation dismissing with prejudice**

<center>17</center>

**another ADA case brought in her name that had been pending before another judge of this Court.** See Dkt. 63 ex. 1; see also Stipulation of Dismissal [Dkt. 49], Burgess v. Jakobsen, No. 18-CV-5001 (S.D.N.Y. Jan. 4, 2019).

The Court characterized Mr. Finkelstein's written submissions attempting to explain his inability to get ahold of his client and requesting that *that* case be dismissed, at worst, without prejudice, as "amount[ing] to little more than **hot air" and *not* indicative of "an ethically minded attorney"** (Burgess, supra 2019 WL 719199, at *4 n. 3 [S.D.N.Y. Feb. 20, 2019]), going on to note that on multiple other occasions around the same time, Mr. Finkelstein signed *voluntary* stipulations of discontinuance *with* prejudice of cases with the same plaintiff (Ms. Burgess) (id. at * 4):

> Mr. Finkelstein implores that any dismissal of this case be without prejudice, yet, inexplicably, he agreed to voluntarily dismiss another of Plaintiff's cases pending before the undersigned with prejudice only two weeks ago, see Stipulation of Dismissal [Dkt. 47], Burgess v. Two Charlton Owners Corp., No. 18-CV-5955 (S.D.N.Y. Jan. 29, 2019), and did the same in another case pending before another Southern District judge just a few weeks before that, see also Stipulation of Dismissal [Dkt. 49], Burgess v. Jakobsen, No. 18-CV-5001 (S.D.N.Y. Jan. 4, 2019).

**C.**     **The Totality Of The Facts Gleaned From The Criminal Complaint, And The Multitude Of ADA Lawsuits Filed By Mr. Finkelstein, *Strongly* Suggests An Expansive, Brazen And Continuing Scheme To Defraud The Court And Parties**

Defendants submit, respectfully, that there exists more than enough evidence of a sufficiently disturbing pattern of conduct by Mr. Finkelstein – *even putting aside* the allegations made after an investigation as outlined in the criminal complaint – so as to warrant this Court's compulsion of the plaintiff and Mr. Finkelstein to produce evidence sufficient to satisfy this Court and defendants, that Mr. Finkelstein was duly retained to prosecute the within action.

It is further submitted, respectfully, that simply permitting Mr. Finkelstein the opportunity to electronically submit documents, declarations or purported affidavits that comport with part of the relief requested herein, *without also* compelling both plaintiff and Mr. Finkelstein to appear in person before the Court, and cause Mr. Antolini to submit to an on-the-record, under oath framed-issue hearing for the purpose of affording counsel and the Court and opportunity to test the veracity of Mr. Antolini's purported retention of Mr. Finkelstein and the documents, if any, that are produced, would be to foster an ongoing opportunity at a possibly massive and on-going fraud.

Failing this measure, there is simply no way of truly knowing whether any putative document(s) submitted by Mr. Finkelstein amount to just more "hot air" and an attempt to continue a possible fraud upon the Court and the parties.  Simply put, given the disturbing pattern of alleged deceit, falsified documentation or the fertile ground to do so against a lengthy backdrop of similar conduct, anything short of the most stringent test of the legitimacy of the instant lawsuit would only serve to foster possible continued misconduct and continued misuse and waste of Court and party resources in defending against false claims with the only end game of defrauding defendants of extracted settlement fees to avoid the expansive cost of litigation, *an outcome that is apparent in the vast majority the ADA lawsuits filed by Mr. Finkelstein.*

Respectfully, "preservation of the integrity of the judicial process" need not "wait upon the diligence of litigants" (<u>Hazel-Atlas</u>, 322 U.S. at 246), and most certainly, need not await until there is final disposition of the matter to wait and see *if* the allegations of Mr. Finkelstein's apparent fraud prove true beyond a reasonable doubt.  <u>See</u> <u>United States v.</u>

19

Beggerly, 524 U.S. 38, 47 (1998) (*citing* Hazel-Atlas and concluding that courts must intervene "*to prevent* a grave miscarriage of justice") (emphasis added).

## POINT II

### STUART FINKELSTEIN SHOULD BE DISQUALIFIED FROM REPRESENTING THE PLAINTIFF IN THIS ACTION AND REFERRED TO THE NEW YORK STATE BAR DISCIPLINARY AUTHORITIES FOR OPENING OF AN INVESTIGATION INTO HIS RE-INSTATEMENT TO THE NEW YORK BAR

**A.     Disqualification of Counsel**

This Court is well within its discretion to disqualify counsel.  See Purgess v. Sharrock, 33 F.3d 134, 144 (2d Cir.1994) ("The disqualification of an attorney in order to forestall violation of ethical principles is a matter committed to the sound discretion of the district court."). "Federal courts adjudicating questions involving the ethics of attorneys look to the local rules of professional conduct for guidance."  National Credit Union Admin. Bd. v. RBS Securities, Inc., No. 13 Civ. 6726, 2014 WL 1257775, at *2 (S.D.N.Y.March 27, 2014), *citing* Hempstead Video, Inc., v. Inc. Vill. of Valley Stream, 409 F.3d 127, 133 (2d Cir.2005).

**B.     *At the Very Least*, Mr. Finkelstein Should Be Disqualified From Continuing To Represent Plaintiff in This Action**

*Even if* this Court is satisfied that sufficient evidence exists that plaintiff lawfully retained Stuart Finkelstein after a framed issue hearing to test the veracity of the facts and circumstances surrounding the putative lawful retention, Stuart Finkelstein should nonetheless be disqualified from continuing to prosecute this action on plaintiff's behalf. Specifically, because Stuart Finkelstein was engaged in the practice of law in Florida during the period of his disbarment in New York, his materially false representations to the contrary to the New York State Bar as a predicate for his successful motion for reinstatement *prima facie* disqualifies him from representing the plaintiff.

20

If this Court agrees that Stuart Finkelstein should be disqualified from continuing to represent plaintiff in this action, the Court should stay all subsequent proceedings for 60 days to afford plaintiff the opportunity to retain new counsel or declare his intent to continue prosecuting this action *pro se*.

## CONCLUSION

Accordingly, based upon the foregoing, the Court should grant the relief requested herein, together with such further and different relief as the Court deems just and proper.

Dated: New York, New York
        April 1, 2020

<div style="margin-left: 40%;">

Yours, etc.,
RUBIN PATERNITI
GONZALEZ KAUFMAN LLP


By: _____
        Juan C. Gonzalez, Esq.
        David Lafarga, Esq.
Attorneys for Defendant(s)
VILLAGE REALTY LLC
555 Fifth Avenue, 6th Floor
New York, NY 10017
Tel: (646) 809-3370
Fax: (646) 809-1622
gonzalez@rpgklaw.com
File No.: 3748.1395

*- and -*

</div>

THE LANDAU GROUP, PC

By: _____

       Kevin Landau, Esq.
       Zach Landau, Esq.

Attorneys for Defendants
KENNETH ROSENBLUM, BERNICE
ROSENBLUM, JORGE GUZMAN and
LAMANO WEST VILLAGE LLC
Kevin A. Landau, Esq.
Zachary R. Landau, Esq.
45 Rockefeller Plaza, Suite 2000
New York, New York 10111
(212) 537-4025
kevin@thelandaugroup.com
zach@thelandaugroup.com
*Attorneys for Defendants/Counter Plaintiffs*

4842-5603-7451, v. 1