UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

| | | |
|---|---|---|
| DINO ANTOLINI, | : | Case No.: 1:19-cv-06264 (LGS) |
| | : | |
| Plaintiff, | : | |
| | : | |
| - against - | : | |
| | : | |
| KENNETH ROSENBLUM, BERNICE | : | |
| ROSENBLUM, VILLAGE REALTY LLC, | : | |
| JORGE GUZMAN and LAMANO WEST | : | |
| VILLAGE LLC, | : | |
| | : | |
| Defendants. | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
<u>OMNIBUS MOTION, AND IN OPPOSITION TO CROSS MOTION</u>**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...........................................................................................i

REPLY INTRODUCTION ........................................................................................1

REPLY ARGUMENT ...............................................................................................1

DEFENDANTS' MOTION SHOULD BE GRANTED IN ITS ENTIRETY, AS
PLAINTIFF HAS CONCEDED ALL ARGUMENTS AND POINTS OF RELIEF
SOUGHT IN DEFENDANTS' MOTION ...................................................................1

    A. Plaintiff's Has Failed To Oppose Defendants' Motion In Any Meaningful
Way, Amounting To A Concession Of Defendants' Entitlement To The
Relief Sought ....................................................................................................1

    B. Rather Than Address Defendants' Contentions And The Relief Sought
Head On, Plaintiff Instead Studiously Avoids The Issues In An Attempt
To Divert The Court's Attention .........................................................................1

        1. Without A Single Affidavit or Piece of Evidence in Opposition,
Plaintiff's Counsel Instead Devotes His Efforts To Studious
Distractions And Issue Avoidance ...............................................................2

        2. Plaintiff's Virtual Non-Response Amounts To A Concession.....................3

        3. Plaintiff Concedes To A Framed-Issue Hearing, Though With Self-
Serving Limitations That Lack Any Articulated Basis in Law ....................8

        4. Noteworthy, Plaintiff's Counsel Totally Fails To Oppose That Portion
Of The Motion Seeking His Disqualification................................................9

OPPOSITION TO CROSS MOTION TO AMEND COMPLAINT ...........................11

4842-5603-7451, v. 1

TABLE OF AUTHORITIES

CASES

<u>American Tissue, Inc. v. Donaldson, Lufkin & Janrette Securities Corp.</u>,
    233 F.R.D. 327, 329 (S.D.N.Y. 2005) ................................................................. 12

<u>Anderson v. Greene</u>,
    2017 WL 3503686 (S.D.N.Y 2017) ...................................................................... 11

<u>Battagliola v. National Life Ins. Co.</u>,
    2005 WL 101353, No. 03-civ-8558 (S.D.N.Y. Jan. 19, 2005) ............................... 10

<u>Blue Planet Software, Inc. v. Games Int'l, LLC</u>,
    331 F.Supp.2d 273 (S.D.N.Y. 2004) ..................................................................... 10

<u>Board of Educ. v. Nyquist</u>,
    590 F.2d 1241 (2d Cir. 1979) ................................................................................ 10

<u>Feola v. New York State Bar Ass'n</u>, 37 A.D.2d 789
    (3d Dep't 1971) ............................................................................................... 6 n. 4

<u>First Capital Asset Mgmt., Inc. v. Brickellbush, Inc.</u>,
    218 F. Supp. 2d 369 (S.D.N.Y. 2002) .................................................................... 9

<u>Hull v. Celanese Corp.</u>,
    513 F.2d 568 (2d Cir. 1975) .................................................................................. 10

<u>In re UBS AG Secs. Litig.</u>,
    2012 WL 4471265 (S.D.N.Y. Sept. 28, 2012) ........................................................ 9

<u>In re Randel</u>, 158 N.Y. 216
    (1899) ............................................................................................................. 6 n. 4

<u>Koehler v. Bank of Bermuda (New York) Ltd.</u>,
    No. 96–CV–7885, 1998 WL 67652 (S.D.N.Y. Feb. 19, 1998),
    <u>aff'd</u> 209 F.3d 130 (2d Cir. 2000) .......................................................................... 9

<u>Malin v. XL Capital, Ltd.</u>,
    312 F. App'x 400 (2d Cir. 2009) ........................................................................... 11

<u>Matter of Kay</u>,
    194 A.D.2d 99 (1st Dep't 1993) ......................................................................... 6 n. 4

Matter of Kadish,
    240 A.d.2d 84, 85 (1st Dep't 1998) ................................................................. 6 n. 4

McGee v. McGready,
    2019 WL 6341290 (S.D.N.Y. 2019) ......................................................................... 1

McLean v. City of Rome, New York,
    No. Civ. A. 95CV1713, 1998 WL 312350 (N.D.N.Y. June 8, 1998) ..................................... 1

NCK Org. Ltd. v. Bregman,
    542 F.2d 128 (2d Cir. 1976) ................................................................................ 10

New York State Court Clerks Ass'n v. Unified Court Sys. of the State of NY,
    25 F.Supp.3d 459 (S.D.N.Y. 2014) .......................................................................... 1

Papanicolaou v. Chase Manhattan Bank, N.A.,
    720 F. Supp. 1080 (S.D.N.Y. 1989) ....................................................................... 10

Separzadeh v. Iconix Brand Grp., Inc.,
    No. 15 Civ. 8643, 2017 WL 1330331 (S.D.N.Y.  Apr. 10, 2017) ......................................... 11

Wilkov v. Ameriprise Fin. Servs., Inc.,
    753 F. App'x 44 (2d Cir. 2018) ............................................................................. 1

Wood v. Mutual Redevelopment Houses, Inc.,
    2019 WL 6174369 (S.D.N.Y. 2019) ....................................................................... 11

STATUTES AND RULES

Fed. R. Civ. P. 7(b)(1)(B) ........................................................................................ 11

Local Rule 7.1 ............................................................................................... 2, 11

SECONDARY SOURCES

1A Carmody-Wait 2d § 3:316 ................................................................................. 6 n. 4

4842-5603-7451, v. 1

## REPLY INTRODUCTION

Defendants respectfully submit this Reply Memorandum of Law in further support of their joint motion and in opposition to plaintiff's belated cross motion.[1]

## REPLY ARGUMENT

### DEFENDANTS' MOTION SHOULD BE GRANTED IN ITS ENTIRETY, AS PLAINTIFF HAS CONCEDED ALL ARGUMENTS AND POINTS OF RELIEF SOUGHT IN DEFENDANTS' MOTION

**A.    Plaintiff's Has Failed To Oppose Defendants' Motion In Any Meaningful Way, Amounting To A Concession Of Defendants' Entitlement To The Relief Sought**

"It is well-settled that the failure to oppose an argument raised in a motion to dismiss is deemed a concession of the argument and abandonment of the claim." McGee v. McGready, 2019 WL 6341290 (S.D.N.Y. 2019 (Roman, J.), *citing* Wilkov v. Ameriprise Fin. Servs., Inc., 753 F. App'x 44 (2d Cir. 2018) ("abandoned * * * when she failed to oppose them in her opposition to" motion); see also New York State Court Clerks Ass'n v. Unified Court Sys. of the State of NY, 25 F.Supp.3d 459 (S.D.N.Y. 2014) ("failure to address the point provides an independent basis for dismissal."); McLean v. City of Rome, New York, No. Civ. A. 95CV1713, 1998 WL 312350 at * 5 (N.D.N.Y. June 8, 1998) (Pooler, D.J.) (plaintiff "consented to defendants' motion * * * by failing to oppose it.").

**B.    Rather Than Address Defendants' Contentions And The Relief Sought Head On, Plaintiff Instead Studiously Avoids The Issues In An Attempt To Divert The Court's Attention**

Initially, plaintiff purported to oppose defendants' motion with an 11-paragraph Declaration lacking *any* substance or analysis of the contentions raised, and was instead more a case study in red herrings designed solely to distract the Court's attention away from the actual

---

[1] Cognizant of the Court's page limit for reply memoranda (10 pages), defendants respectfully note that the two pages in excess are solely due to the need to respond to plaintiff's untimely and waived cross motion to amend.  This Court extended defendants' reply to 5/22/20, and is therefore timely made (see Dkt. # 56).

substance of defendants' motion (see Dkt. # 53, filed 4/15/20).  Shortly thereafter, the Court *sua sponte* struck plaintiff's opposition for lack of compliance with Local Civil Rule 7.1 and ordered plaintiff to re-file a complaint opposition (see Dkt. # 54).

On this second go-round (Dkt. # 60), plaintiff interposed (a) a procedurally defective and meritless Cross Motion for Leave to amend the complaint *(addressed below)*; (b) the *identical*, previously stricken Declaration of Stuart H. Finkelstein, Esq. (Dkt. # 53), still with no supporting evidence in rebuttal, and (c) a Memorandum of Law that in total sum (i) essentially mirrors the stricken Declaration in terms of the *singular* focus on alleged typographical errors in the complaint that Mr. Finkelstein conveniently chalks up to poor draftsmanship; and (ii) without explicit invocation and by implicit acknowledgement that he is a material witness in this action, offers Mr. Finkelstein's asserted Fifth Amendment right against self-incrimination due to the pending criminal action against him in the Southern District of New York.

1. **Without A Single Affidavit or Piece of Evidence in Opposition, Plaintiff's Counsel Instead Devotes His Efforts To Studious Distractions And Issue Avoidance**

Plaintiff's studious devotion to side distractions to avoid confronting the crux of defendants' motion is telling: plaintiff devotes virtually all of his opposition (*e.g.*, re-submitted Declaration of Mr. Finkelstein [Dkt. # 60-1]; substantively identical Memorandum of Law, [Dkt. # 60-2]) to drilling down the self-serving position that a few typographical errors in a complaint is not evidence that plaintiff and/or his counsel in concert are not actively engaged in a scheme to defraud this Court and the parties.[2]  What Mr. Finkelstein refers to typographical errors, however, is not raised in a vacuum, but in a rather unusual context.

_____

[2] See Finkelstein Decl., Dkt. 60-1, ¶¶ 6-7; Mem. in Opp., Dkt. 60-2, at 5-8.

Equally telling is plaintiff's strawman that, *in fact*, the subject premises is not ADA compliant (see Finkelstein Decl., Dkt. 60-1, ¶ 2),[3] when in fact, defendants' motion was not intended to address the specific allegations in plaintiff's complaint concerning allegations of ADA non-compliance. Simply put, defendants did not move under Rule 56, and nowhere in defendants' papers did they purport to litigate those issues, saying nothing of the lack of any discovery in this case.

### 2.    Plaintiff's Virtual Non-Response Amounts To A Concession

Plaintiff's counsel's contention, *exclusively*, is that the typographical errors in the complaint are mere "gaffes" innocently amounting to law "office failure on [his] part and nothing else" (Finkelstein Decl., Dtk. 60-1, ¶ 7).

We leave it to the Court to determine whether "gaffes" in suing one location but variously reciting the address of an entirely different address are just that, or in context, indicate possible fraud sufficient to warrant protective intervention by the Court. Such so-called "gaffes" are difficult to accept considering that (i) a Tittle III ADA defendant's physical address is arguably *the most essential* piece of asserted fact that anchors this type of suit in the first place, and yet plaintiff got that completely wrong, instead listing an address for an entirely differ location (see Antolini v. Morgenstern, et al., 19-cv-04938-JMF) that forms one of the other 15 other establishments that plaintiff has sued for virtually identical alleged ADA violations; and (ii) plaintiff's counsel stands accused of multiple counts of fraud in interposing *hundreds* of virtually identical ADA suits in this and other jurisdictions that has netted him,

---

[3] Defendants will not engage in Mr. Finkelstein's *ad hominem* attacks upon counsel (see Finkelstein Decl., Dtk. 60-1, ¶ 4 ["deceptive drivel"]; ¶ 8 ["matchless guile"]; ¶ 9 ["purposefully omitted vital, essential facts"]; see also Mem. in Opp., Dkt. 60-2, at 6 ["deceitfully"]) – serving only to distract the Court's attention from the merits of the motion – except to note the irony of *Mr. Finkelstein's* personal attacks, which do not go unnoticed in the face of his proclamation that *defendants* have "personally go[ne] after [him] as a substitute for confronting and remedying the allegations in the Complaint" (Finkelstein Decl., Dtk. 60-1, ¶ 3). Mr. Finkelstein confuses the issues.

allegedly, nearly $1,000,000 in collected attorneys' fees.  But as defendants have noted (Dkt. 51, at 11), "[t]he foregoing" – which plaintiff chalks up to typographical "gaffes" – "is just the tip of the iceberg."  *Mr. Finkelstein barely addresses the "gaffes" and glaringly ignores the rest of the iceberg.*

The purpose of defendants' motion was to (i) marshal facts of fraud by Stuart H. Finkelstein, Esq. in commencing *hundreds* of virtually identical ADA lawsuits (such as the instant case) in this and other jurisdictions as alleged *not* by defendants, but by the U.S. Attorney's Office for the Southern District of New York and (ii) scour samplings of other filings by Stuart H. Finkelstein, Esq. in a multitude of other virtually identical ADA lawsuits that echo or appear to mirror the very allegations of fraud in brining ADA lawsuits and that evince a *pattern* of ethically questionable conduct by Mr. Finkelstein and concerns raised in other cases not by defendants, but by *other* litigants and Courts that have encountered Mr. Finkelstein.

In doing so, defendants' motion was grounded by two fundamental points of relief: (1) compel production of certain threshold evidence and plaintiff's appearance for a framed issue hearing to explore the ethics and legality of Mr. Finkelstein's retention in this and each of plaintiff's multitude of other virtually identical Tittle III ADA suits brought by Mr. Finkelstein, failing which to the Court's satisfaction, the matter be dismissed with prejudice; and (2) if the matter proceeds, immediately disqualify Mr. Finkelstein from continued representation of plaintiff Dino Antolini on multiple grounds, including that Stuart H. Finkelstein, Esq. is a material witness to questions that are central to this lawsuit, as well as (perhaps more importantly) because his standing as a member of the bar of this State has been implicated in a pending criminal proceeding involving his alleged material falsehoods and misrepresentations

to the New York State bar licensing authorities in his bid for reinstatement (see Dkt. # 51, at 7-8).

Mr. Finkelstein is correct (Decl., ¶ 8) to the limited extent that the fact of his pending criminal complaint was brought to this very Court's attention in Antolini v. 75 & 81 Orchard Associates LLC et al, 1:19-cv-05894-LGS, as acknowledged in defendants' Memorandum of Law (see Dkt. # 51, at 16).  But in that case, plaintiff and Mr. Finkelstein were permitted to continue to prosecute the case upon Mr. Finkelstein's emailing to the Court a PDF of a terse, putative reply email ostensibly by Dino Antolini to Mr. Finkelstein of the former's retention of the latter.  Unlike in Orchard Associates, defendants in this case sought leave to, and now have, presented both a detailed marshaling not only of the alleged facts raised in the criminal complaint, but also going beyond that, an unpacking of allegations as to Victim-2 (Jose Figueroa) tied to actual PACER records where in Mr. Finkelstein submitted or is alleged to have submitted false declarations under penalty of perjury to other Judges of this Court (e.g., "unforthcoming communications" with the Court "under penalty of perjury") calling into question the very same issues raised in this case:  Mr. Finkelstein's lawful and ethical retention and representation of one Jose Figueroa and prompting those Judges to refer Mr. Finkelstein to the Southern District's Grievance Committee (see Deft's Mem. Of Law, Dkt. # 51, at 11-15).  Evident in all of the foregoing is a virtually identical pattern of conduct by Mr. Finkelstein that in one variation or another mimics conduct or concerns echoed by the U.S. Attorney's office's investigation that culminated in a detailed criminal complaint of Mr. Finkelstein having filed hundreds of fraudulent ADA lawsuits.

Certainly, that Mr. Finkelstein is alleged to have committed ethical transgressions and/or fraudulent/criminal conduct in hundreds of other virtually identical ADA cases – and as

indicated even by other Judges of this Court, has submitted material falsehoods in some of those very ADA suits that themselves prompted referral to the Grievance Committee of the Southern District of New York (see e.g. Deft's Mem. of Law, Dkt. # 51, at 13-15) – is not evidence that he did so in this case.  But it is telling that Mr. Finkelstein ostensibly invokes his Fifth Amendment privilege against self-incrimination *in this case*, which explains why he offers no response other than to comment on the alleged typographical "gaffes" as not amounting to fraud and therefore warranting denial of defendants' motion.  Simplistic as it is, plaintiff's counsel takes this logical bridge a bit too far.  *The closest Mr. Finkelstein comes to addressing the gravamen of defendants' motion is to state the obvious: that he, Stuart H. Finkelstein, Esq., is presumed innocent of the charges brought against him by the U.S. Attorney's Office* (see Mem. in Opp., at 8-9).

Presumption of innocence is unquestioned in a criminal proceeding.  But no such presumption applies here,[4] and recitation of the principle is no substitute for not responding to the arguments raised in the motion and relief sought therein in this civil proceeding.  Indeed, the issues raised in defendants' motion call for disqualification if plaintiff's action is not

---

[4] Plaintiff cites to Antolini v. N Corp., 19-cv-07385 (KPF), where the Court in that case reiterated, of course, the presumption of innocence.  The defendants in that case however, merely moved for a stay of proceedings pending the outcome in Stuart H. Finkelstein's criminal matter, without any explanation or clear understanding of the motion or relief sought.  This case is different and proposes a measured approach to what is an overdue inquiry into the practices of Stuart H. Finkelstein, Esq.  Moreover, it should still be noted that the burden of proof of criminal proceedings is not applicable to this Court's inquiry, nor is the presumption of innocence insofar as it relates to the falsehoods Mr. Finkelstein is alleged to have submitted to the New York State licensing authorities.  See 1A Carmody-Wait 2d § 3:316, *citing* In re Randel, 158 N.Y. 216, 219 (1899) (negative inference rises for refusing to testify in civil disciplinary proceedings where innocence "presumption in such [criminal cases] does not apply"); *and* Feola v. New York State Bar Ass'n, 37 A.D.2d 789, 790 (3d Dep't 1971) (same).  To the extent any constitutional barrier is raised to questioning Mr. Finkelstein, courts in New York are clear that for purposes of *civil* disciplinary proceedings, a refusal to testify does not bind him to findings in any subsequent criminal proceedings (e.g., presumption of innocence still holds), but do civilly give rise to a negative *inference* as to the questions to be posed or subject matter generally.  See e.g., Matter of Kay, 194 A.D.2d 99, 101 (1st Dep't 1993) (assertion of Fifth Amendment privilege "by itself" does not warrant discipline, but sanctioning attorney for professional misconduct); Matter of Kadish, 240 A.d.2d 84, 85 (1st Dep't 1998) ("a negative inference may be drawn from his refusal to explain the missing funds" in face of allegation of conversion of client funds).

dismissed for failure to appear and submit to a framed-issue hearing to adduce adequate and sufficient proof of Mr. Finkelstein's lawful retention.  Disqualification rests on two interrelated points: Mr. Finkelstein is a material witness *and* because of the criminal allegations against him by the U.S. Attorney's Office relating to his reinstatement to the New York bar.  Any referral of Mr. Finkelstein to the New York State bar pertaining to alleged material falsehoods made to the licensing authorities on his petition for reinstatement raises the specter of further *disciplinary* action by the New York State bar, but they do not implicate Mr. Finkelstein criminally.  To the extent any questioning of Mr. Finkelstein as a witness in this case do implicate him criminally, it is at that time that he may assert his Constitutional rights, but not before as an impediment in this civil action where his continued participation in this litigation threatens its integrity.

Thus, plaintiff's counsel either responds to the substance of the motion, or he voluntarily agrees to withdraw from further representation in this matter: Mr. Finkelstein's refusal to offer a response to the arguments and points for relief herein is tantamount to an acknowledgement that, at the very least, he is a material witness in this case.  Most glaring is that other than as to the so-called typographical "gaffes", Mr. Finkelstein declines to address, *in toto*, any aspect of *this* motion as to *this* plaintiff, Dino Antolini, irrespective of what has been marshalled from the public record as to the multitude of *other* virtually identical ADA suits serially commenced by Mr. Finkelstein on behalf *other* plaintiffs, and instead opts to cloak himself with an implicitly invoked Fifth Amendment right not just as to all other allegedly fraudulent schemes, but also as to his representation of Dino Antolini in his own serial Title III ADA filings, this action included.

Mr. Finkelstein fails to address any of the foregoing, which is tantamount to a concession, and instead seeks to cast defendants motion as a "critique" of this Court in allowing

7

Mr. Finkelstein and plaintiff to proceed with the Orchard Associates case on the strength of an email, ostensibly written by plaintiff in reply to Mr. Finkelstein.  Putting aside that the email produced by Mr. Finkelstein was *neither verified nor sworn to*, in context, ought not to be taken at face value.  This Court did not have the benefit of the full context, and this Court is now presented with a clearer picture of the serious concerns for possible fraud upon this Court that permeates conduct by Mr. Finkelstein as alleged in the criminal complaint and echoed in other public records.  Simply put, this Court did not have the benefit of having been presented with the issues, and it is upon this ground that, unlike in Orchard Associates, plaintiff and plaintiff's counsel's physical presence in court for a framed issue hearing *is* warranted, and it is why, for the integrity of the judicial process, a simple email or self-serving unverified and unsworn statements should no longer suffice.

### 3.    Plaintiff *Concedes* To A Framed-Issue Hearing, Though With Self-Serving Limitations That Lack Any Articulated Basis in Law

As noted above, Mr. Finkelstein fails to oppose defendants' motion and relief sought *with any* substance.  Mr. Finkelstein devotes his entire opposition to studiously avoiding the central questions raised, *and completely ignoring* the relief sought, with one affirmative exception: Mr. Finkelstein purports to be willing to appear in person and produce Mr. Antolini for a framed-issue hearing.  Without basis in law or fact, however, plaintiff objects to defendants' questioning of Mr. Antolini about the circumstances of his retention at said hearing "unless [defendants] waive their deposition" of the plaintiff (Finkelstein Decl., Dkt. $ 60-1, ¶ 11).  Plaintiff's counsel conflates a framed issue hearing on matters of threshold importance to this action with discovery on the merits: defendants' request for a limited subject-matter framed issue hearing is for the very purpose of ascertaining the circumstances of plaintiff's retention of Stuart H. Finkelstein on this and each of the 15 other virtually identical ADA lawsuits

4842-5603-7451, v. 1

purportedly brought by Mr. Finkelstein on plaintiff's behalf in light of the concerns as raised and outlined in defendants' motion.  A framed issue hearing goes beyond the technical merits of the suit and invokes this Court's inherent duty and authority to shield against abusive, vexatious and possibly fraudulent/criminal schemes.

### 4.    Noteworthy, Plaintiff's Counsel *Totally* Fails To Oppose That Portion Of The Motion Seeking His Disqualification

As noted above, Mr. Finkelstein says nothing *at all* in opposition to that portion of defendants' motion seeking his disqualification from continued representation in this case on the ground that he – Stuart H. Finkelstein, Esq. – submitted or caused to be submitted false statements to the New York State attorney licensing authorities in connection with his application for reinstatement to the New York bar based upon the investigation by the U.S. Attorney's Office detailing his unauthorized practice of law in Florida that forms the basis of numerous counts in the criminal complaint.[5]  See e.g. First Capital Asset Mgmt., Inc. v. Brickellbush, Inc., 218 F. Supp. 2d 369, 392–93 (S.D.N.Y. 2002), *aff'd sub nom.* First Capital Asset Mgmt., Inc. v. Satinwood, Inc., 385 F.3d 159 (2d Cir. 2004) (on motion to dismiss for lack of jurisdiction, "*plaintiffs fail to address* this ground for jurisdiction in their memorandum of law [in opposition], *and the Court considers it waived"* (emphasis added); In re UBS AG Secs. Litig., 2012 WL 4471265, at *11 (S.D.N.Y. Sept. 28, 2012) (party "concedes through silence" arguments it fails to address in opposition); Koehler v. Bank of Bermuda (New York) Ltd., No.

---

[5] See Petition for Disciplinary Revocation by Mark D. Cohen, Esq. of the Florida Bar (*available at* https://efactssc-public.flcourts.org/CaseDocuments/2018/1521/2018-1521_Petition_70804_PETITION2DDISCIPLINARY20REVOCATION.pdf [last visited 05/12/20]), for whom Mr. Finkelstein worked in Florida.  In addition to the S.D.N.Y.'s criminal complaint, Mr. Cohen's petition outlines in further detail Stuart H. Finkelstein's allegedly fraudulent scheme in Florida as to one victim plaintiff (Tal Hilson) that in part also recounts Mr. Finkelstein's unauthorized practice of law, not only in violation of the terms of his disbarment in New York, but also in direct contradiction to the material falsehoods Mr. Finkelstein allegedly made to the New York State bar licensing authorities in connection with his petition to be reinstated to the Bar of New York.

96–CV–7885, 1998 WL 67652, at *8 (S.D.N.Y. Feb. 19, 1998), aff'd 209 F.3d 130 (2d Cir. 2000) ("Because Plaintiff has failed to oppose Defendant['s] motion to dismiss these two counts, the *Court views Plaintiff's failure to oppose as an implicit concession to the relief sought* by [defendant] and therefore dismisses these two counts as against [defendant]"), *aff'd*, 209 F.3d 130 (2d Cir. 2000) (emphasis added).

Independent of Mr. Finkelstein's concession that he should be disqualified from further representation in this case, given the balance of defendants' motion concerning Mr. Finkelstein's activities in the multitude of other ADA suits that forms the basis of counsel's intent to call Mr. Finkelstein as a material witness in this action, and given the "district court['s] [] duty to supervise members of its bar" (NCK Org. Ltd. v. Bregman, 542 F.2d 128, 131 [2d Cir. 1976]), "disqualification is appropriate when a lawyer's conduct might taint the case." Papanicolaou v. Chase Manhattan Bank, N.A., 720 F. Supp. 1080, 1083 (S.D.N.Y. 1989), *quoting* Board of Educ. v. Nyquist, 590 F.2d 1241, 1246 (2d Cir. 1979).  Mr. Finkelstein's testimony as a witness is no doubt material and necessary and cannot be remedied without his disqualification.

"[T]he question ultimately is one of preserving the public's trust in the 'scrupulous administration of justice and in the integrity of the bar.'  For that reason, any lingering doubt must be resolved in favor of disqualification." Battagliola v. National Life Ins. Co., 2005 WL 101353, No. 03-civ-8558 (GDB)(AJP) (S.D.N.Y. Jan. 19, 2005); see Blue Planet Software, Inc. v. Games Int'l, LLC, 331 F.Supp.2d 273, 275 (S.D.N.Y. 2004) ("When a party moves for the disqualification of his adversary's attorney, 'any doubt is to be resolved in favor of disqualification.'"), *quoting* Hull v. Celanese Corp., 513 F.2d 568, 571 (2d Cir. 1975).

Accordingly, even if the Court does not dismiss this case outright on other grounds, Mr. Finkelstein must be disqualified.

4842-5603-7451, v. 1

## OPPOSITION TO CROSS MOTION TO AMEND COMPLAINT

Plaintiff's cross motion for leave to amend his complaint, ostensibly to correct "typographical errors" (Mem. In Opp., Dkt. 60-2, at 4-5), should be denied.

*First,* plaintiff did not originally cross move for any relief, made no mention of a desire to do so in the parties' joint status letter of 2/27/20 (Dkt. # 47), and this Court's 4/17/20 Order striking plaintiff's original filing was a directive to "re-file his opposition in compliance with Local Rule Civil Rule 7.1".  Accordingly, plaintiff has waived the right to seek leave.

*Second*, plaintiff's putative cross motion is nonetheless procedurally improper and should be denied.  Belatedly, plaintiff purports to seek leave to amend but in doing so fails to attach an unsigned copy of the proposed amended pleading as an exhibit to the motion that also clearly identifies the proposed amendments with either redline markings, highlighting or other markers unmistakably indicating what the proposed amendments would look like.  See Malin v. XL Capital, Ltd., 312 F. App'x 400, 403 (2d Cir. 2009); see also Anderson v. Greene, 2017 WL 3503686 (S.D.N.Y 2017).  In doing so, plaintiff's motion fails to comply with Rule 7(b) of the Federal Rules of Civil Procedure, which requires a motion for a court order to "state with particularity the grounds for seeking the order" (Fed. R. Civ. P. 7[b][1][B]).  To satisfy the particularity requirement, "a complete copy of the proposed amended complaint must accompany the motion" for leave to amend "so that both the Court and opposing parties can understand the exact changes sought."  Separzadeh v. Iconix Brand Grp., Inc., No. 15 Civ. 8643 (AT)(JCF), 2017 WL 1330331, at *2 (S.D.N.Y.  Apr. 10, 2017).

*Third*, plaintiff's failure to attach a proposed amended pleading alone is sufficient grounds to deny leave to amend (see Wood v. Mutual Redevelopment Houses, Inc., 2019 WL 6174369 * n.4 (S.D.N.Y. 2019), as it unduly prejudices defendants, leaving them only to

4842-5603-7451, v. 1

speculate what, *exactly*, those proposed changes could be.   See <u>American Tissue, Inc. v.</u> <u>Donaldson, Lufkin & Janrette Securities Corp.</u>, 233 F.R.D. 327, 329 (S.D.N.Y. 2005) (denying leave to amend where plaintiff only attached proposed amended pleading in reply on, thus prejudicing defendant as it "no longer had a proper opportunity to address the complaint"). Instead, all we have are references to changes counsel would like to make, vaguely referenced in a memorandum of law "to clarify the factual allegations caused by multiple typographical errors in an effort to simplify the complaint and promote judicial economy" (Mem. in Opp., at 4).

Plaintiff's continued failure to adhere to proper procedures is the exact opposite of judicial economy, only adding to defendants' unfair prejudice, to say nothing of their mounting fees in defense of this frivolous action.

*Finally*, regardless of the procedural failings, an amendment to correct "typographical errors", as counsel claims, would be an exercise in futility: if the gravamen of the allegations in the complaint – ADA non-compliance – are legitimately based, plaintiff can address any and all such issues in the normal course of litigation.

The defective and meritless cross motion should therefore be denied.

## <u>CONCLUSION</u>

Accordingly, based upon the foregoing, and those more fully set forth in defendants' Memorandum of Law, the Court should (i) grant the relief sought therein, (ii) deny plaintiff's defective cross motion, and (iii) grant moving defendants such further and different relief as the Court deems just and proper.

4842-5603-7451, v. 1

Dated:  New York, New York
        May 13, 2020

                                 Yours, etc.,
                                 RUBIN PATERNITI
                                 GONZALEZ KAUFMAN LLP

By: _____
                                 Juan C. Gonzalez, Esq.
                                 David Lafarga, Esq.
                                 Attorneys for Defendant(s)
                                 VILLAGE REALTY LLC
                                 555 Fifth Avenue, 6th Floor
                                 New York, NY 10017
                                 Tel: (646) 809-3370
                                 Fax: (646) 809-1622
                                 gonzalez@rpgklaw.com
                                 lafarga@rpgklaw.com
                                 File No.: 3748.1395

                                    - and -

                                 THE LANDAU GROUP, PC

By: _____
                                 Kevin Landau, Esq.
                                 Zach Landau, Esq.

                                 Attorneys for Defendants
                                 KENNETH ROSENBLUM, BERNICE
                                 ROSENBLUM, JORGE GUZMAN and
                                 LAMANO WEST VILLAGE LLC
                                 Kevin A. Landau, Esq.
                                 Zachary R. Landau, Esq.
                                 45 Rockefeller Plaza, Suite 2000
                                 New York, New York 10111
                                 (212) 537-4025
                                 kevin@thelandaugroup.com
                                 zach@thelandaugroup.com
                                 *Attorneys for Defendants/Counter Plaintiffs*

13